Today's cases will be called, as previously announced in the Times, as a lot of the council. The first case today is number 171961, United States v. Rahman Handa. Thank you. Ms. Vicente, good morning. Thank you very much. Good morning, your honors. Alexia de Vicente is on behalf of the United States. If I may, Judge Trelao, I'd like to reserve two minutes for rebuttal. You may. Thank you. This case squarely presents to this court for the first time the question of whether the speedy trial right that attaches upon indictment for one charge extends to a separate and distinct, albeit factually related, charge. The government believes that it does not, and that it should not be banalized from prosecution. I'm stating it rather broadly in your favor. There are other circumstances such as that the new indictment could easily have been brought by the government at the time of the original indictment if it had only done a bit more work at the time, and that there has been some prejudice, considerable prejudice, to the defendant that has occurred in the interim between the original indictment and your new indictment, which was, by the way, a superseding indictment attached to the old indictment and not a separate indictment. If I may begin with the last point that Your Honor makes regarding the superseding indictment. The record here does not reflect why this particular charge was brought by way of superseding indictment rather than a new indictment. But I have little doubt that if the government had proceeded by way of a new indictment, we'd be facing not only the same speedy trial argument that we're facing here. If Arizari-Colón had filled out good law, you'd also have a better case. Respectfully, Your Honor, the government believes that Arizari-Colón does not squarely address the issue that is raised here. In that regard, I think it is important to note that in Arizari-Colón, the superseding indictment under review contained no charges that the original indictment did not. And thus, this Court did not have occasion to consider whether new charges would be subject to a new or different speedy trial clock. And for the same reason, this Court did not have occasion to consider the import of loud talk with respect to new charges. And the Court's decision in Arizari-Colón should therefore not be read as having addressed that issue. The government believes that this is particularly so, given that there's good reason to distinguish the precedential of value with respect to old charges versus new charges. While the superseding indictment under review in loud talk did contain new charges, it also contained charges that had carried through from the time of the original indictment. And therefore, with respect to those original charges, there was no dispute, nor could there be, that the speedy trial clock began to run at the time of the original indictment and finally ended when the superseding indictment under review was dismissed. The question there was whether to measure continuously since the time of the first indictment or to exclude the period. Let's assume that Arizari does not control the outcome. Why should we indulge the government's argument that the only possible, other than speedy trial act, the only possible constraint on the government's ability to do what it did here is the double jeopardy clause? You seem to be reading the Sixth Amendment out of the Constitution. Respectfully, Your Honor, the government believes that what it is doing is limiting the speedy trial right to its proper context. Now, could you answer my question? Is your position that the only constraint on the government is the double jeopardy clause? It is not, Your Honor. There is, in addition to the double jeopardy clause, the backstop of the statutes of limitations as well as the Fifth Amendment protections. All of those are congressionally determined, right? The speedy trial act, the statute of limitations. We also have the Fifth Amendment protections against vindictive prosecution and excessive punitive indictment. Okay, so this defendant would be relegated to Fifth Amendment protections. In the government's view, that is correct. This was a charge that was brought timely within the statute of limitations applicable to bank fraud. Now, I would note that the government is willing to concede that there may be circumstances in which the result would be different. But there are circumstances that are not present here. Such as? Such as, for example, if the defendant had in fact been held to answer on the original charge and were continuously held in custody on that charge. In that case, there may be a countervailing interest, specifically the defendant's liberty interest, which the Supreme Court has routinely emphasized as of particular importance. That would be a due process? Excuse me? That would be an example of a due process limitation? No, the government is willing to concede that that would be a Sixth Amendment issue in that case. But I think it's important here to emphasize that the government's position is that it cannot be that the speedy trial right that attaches upon return of one charge automatically extends to other charges. I did not suggest any automatic extension, but the facts of this case are pretty draconian. Well, the facts, excuse me, Judge Salio, did you have a question? What difference does it make in your view of the case that the new charge arises out of precisely the same factual mosaic as the original charges and certainly could have been brought at the same time? Does there a legal impediment to its being brought at the same time? Well, Judge Salio, in our view, the relevant point here is that it was not required to have been brought. So in other words, your answer is that it should make no difference? That it arises out of the same nucleus of facts and could have been brought at the same time as the original charges? At least insofar as applies to the circumstances present here. And doesn't that open the gate pretty wide for government abuse? Because there's nothing to stop the government then from making Syrian charges. Taking a set of facts, bringing one set of charges today, another set of charges tomorrow, and a third set of charges a year or two years or three years from tomorrow. Well, respectfully, Your Honor, the balance that has been struck in the double jeopardy context in which the court has weighed whatever interest... But this isn't a double jeopardy claim. The claim here is that the Sixth Amendment speedy trial right has been violated. Not that the double jeopardy clause has been violated. You want us to look to the double jeopardy clause for guidance and say apply the same test in both contexts. And what I'm trying to get from you is does it make any sense to apply the same test in both contexts? Because the purpose of the double jeopardy clause and the purpose of the speedy trial guarantee in the Sixth Amendment are quite different as I see them. Yes, Your Honor, the purposes underlying those two amendments do differ. But the government finds instructive the double jeopardy context because it informs the way we view the scope of a criminal prosecution within which the defendant must be speedily brought to trial. And given that in the double jeopardy... May I finish? Yeah, go ahead. I'd like to hear it. Given that in the double jeopardy context, the court has weighed whatever interest the defendant may have in having any and all possible charges arising out of a given course of conduct or transaction resolved in a single proceeding. It has found that interest outweighed by society's right to investigate and prosecute criminal conduct. Do you have a Supreme Court case that you say supports the proposition that we would apply double jeopardy principles to the Sixth Amendment speedy trial right? I think perhaps the best citation there, Your Honor, is the 1966 decision in Newell. The case is not quite on all fours and it is a pre-Barker case and so it doesn't neatly map onto the four-part test that we now apply. But nonetheless, in that case, the court noted the need to read the speedy trial, to interpret the speedy trial guarantee in a way that is harmonious with double jeopardy principles. I would also note that in that case, it emphasized that the later brought charge was timely and that the statutes of limitations with the backdrop of the Fifth Amendment are the primary guarantees. If I've understood you correctly, it might have made a difference if this defendant had been kept in custody, if he had been apprehended the first time and had been kept in custody until you brought the new indictment. Is that correct? That is correct, Your Honor. Okay, and in this case, of course he wasn't in custody under the trial judge's findings, but the government essentially screwed up. They knew where he was, they could have easily found him. He was abroad, he was actually receiving benefits from the U.S. government while the Justice Department couldn't find him. Does that make a difference? The district court found and the government has not challenged that with respect to... Does it make a difference to your constitutional analysis? It does not. In the government's view, this defendant, the only harm that he can complain of is the passage of time, and that passage of time is already accounted for by... The death of one of his key witnesses? His attorney, Your Honor. Yes. And rather, it remains an open question before the district court whether and to what extent the passing of Mr. Quinlan actually caused the defendant prejudice. Mr. Quinlan was not a precipient witness, and presumably much of the information that he has would be available by individuals who were in fact party to the alleged criminal conduct. And the government would no doubt have argued that the crime fraud exception to the attorney-client privilege applied, and you would have tried to get his testimony. I can't speak to that particular question, Your Honor. All right. Thank you. Good morning. Martin Weinberg and Kim Holman on behalf of the appellee, Mr. Honda. First, in terms of the double jeopardy argument, there's no inconsistency here. The government's executive discretion to bring multiple charges limited only by Blockberger is subject to the requirement that they honor the speedy trial rights of the Sixth Amendment. In this case, they didn't. There's no case that exempts the government's violation of speedy trial based on a concept of double jeopardy or Blockberger or same offense. Second, though, the Irizarry case has different facts where the old indictment matched the charges in the new indictment. The circuit in the Worthy case had an exact parallel where you had superseding indictments that added new charges, that changed the nature of the original charge, and this court of appeals started the constitutional clock as of the date of the arrest in the original indictment. But that decision can be read as an implicit assumption by our court without a full discussion of the issue. So one might say our precedent points in a certain direction, but that we have not yet answered this question. I'd like you to address a question. What are the limits of your Sixth Amendment theory? Does it happen in every case regardless of whether there is a Sixth Amendment? Does it depend on some prejudice? Does it depend on the fact that they could have brought the charges? Well, I think first is that the superseding charge needs to be related in a very close way to the original charges. It can't be outside the standards of Rule 8, and in this case that's an easy factor for Mr. Hinder to satisfy because the government in 2008 executed a search warrant seeking evidence of bank fraud. They knew the LaSalle Bank and the Bank of America were FDIC insured. They knew the loans were given by a subsidiary. They had every bit of knowledge they needed, and in fact in paragraphs 5 and 6 of the 2011 indictment they set out the bases of a bank fraud charge and elected not to bring it. And it would set a risky precedent with the government having this arsenal of statutes to bring one charge, withhold the second, and then bring the second one only on the eve of the dismissal of the first set to speed a trial. Second is that the real limit on the imposition of the government is simply not to be negligent regarding the first set of charges. They can supersede indictments. They can bring multiple charges as long as there is not a block book or statute or limit. The only restraint a holding by this court would have is to essentially send the government a message you can't charge someone and do almost nothing to fine them. Mr. Weinberg, on your theory of the case, as I understand your argument, it is implicit and perhaps should be made explicit that the two sets of charges, the charge originally brought and the charge that the government subsequently seeks to bring, both could have been brought originally had the government chosen to do so. Yes, Your Honor. Okay. Both legally, in this case certainly legally, the 1344, and the proof of it is that they superseded counts 1 and 12 and incorporated counts 1 and 12 into count 13. Second, to whatever extent they may have an argument, well, we didn't know this was bank fraud back in 2011. They certainly did in this case. So, leaving aside the cases you referred to, are there any cases in which the factual situation is where the defendant is absent from the country for a period of time, and your client was in this case? There are cases where they have dismissed counts, like your Judge Zobel did, with counts 1 and 12, but I've not seen that exact paradigm when the government adds a charge six years later. What I can say, Your Honor, when talking about precedent, is on pages 31 through 33 of our rappelling brief, seven circuits have addressed superseding indictments, many of which have new charges. All of them date the first Barker test back to the date of the arrest and indictment. Now, it's true that they don't direct themselves. This is a relatively novel government attempt to, I submit, change the law. Yes, irresolutely, it may not be a direct hold-in because the facts are different and worthy. This wasn't the principal issue. When nine justices in a 5-4 decision dated it back to the date of the arrest of the original indictment, even though superseding indictments added destructive device charges. So it's always been implicit that speedy trial starts with an arrest, starts with an indictment, and the government doesn't get to restart a constitutional clock through the mechanism of pulling a new statute into a superseding indictment. Okay, so to be clear, our discussion is about when the clock starts to run, that factor of the Barker factors. In order to maintain successfully a Sixth Amendment claim, you would also have to meet the other Barker factors. So you're not going to show that? Yes, I'm not. I just want to be clear about the limits. All right, another limit. The prejudice that everyone will say continues when the government adds a new count. It's elevated. It's the same prejudice. Whether it's Mr. Hamda who's prejudiced by delay or some other defendant who's prejudiced by incarceration. You have more confidence than I do that the facts aren't going to vary from case to case. When you answer Judge Selya that the first limitation is the government could have brought the charges originally, and then you say, and here they have all of the elements. But what are the limits of could have brought the charges? Suppose they didn't issue the subpoena. They were just negligent. They were sloppy. They didn't take the steps they should have taken. There was an overworked AUSA. Does that also fit into your could have? Absolutely, yes. We're dealing with the first of the Barker tests. The tests two to four have not really been challenged by the government. They're just as applicable to count 13 as they were on count 12. So this is really a focus on count one, and I submit this is a hard one. I don't want to say a simple case, but the facts are strongly supportive of Judge Sobel's decision factually because the government had total rights, total knowledge, and because the bank fraud case is so intricately intertwined with the wide fraud. Yes, there may be more difficult cases at the perimeter. Mr. Weinberg, in the interest of clarity, when I asked you that question, what I had in mind, the government relies on a case, for example, where the original indictment was for counterfeiting, and the subsequent charge was for perjury, a perjury committed about the counterfeiting, but not committed until four years later. That perjury charge could not have been brought at the time of the counterfeiting charge, and to my mind that distinguished that from this type of situation, where the same nucleus of facts that supported the original charges also supported the bank charges, and they could have been brought at the same time. They have to be available if there's a subsequent... Defendants don't get immunized or permitted to commit subsequent crimes and not have the government able to charge them. The Nixon case is totally distinguishable, just as Your Honor said. The perjury came after the original charges and could not have been joined to the original charges. Yes, but that's a helpful clarification, but let's go back to what could have means. I suggested the overwork to AUSA, who didn't do the proper investigation, and then, you know, eight years later says, oh gee, this is what I should have done at the time. It may not be too late to do it. I'll give it a try. And the government would not be... The right of the government, under different circumstances, to challenge a speedy trial dismissal based on ground two, like they did in the Larry Hawke case, where they said we shouldn't get charged for the five years where the case was dismissed in the interlocutory appeals. All of the other factors are in play. Hawke was a willing test. But you'd leave that for the other factors and you would have us announce a rule that the Sixth Amendment clock starts at the time of the original offense where the superseding offense could have been charged at the first time. And related to... And is related to. Yes, Your Honor. Okay. Thank you. Thank you very much. Thank you. In response to Your Honor's questions regarding the potential limitations on the defendant's view, I think it's important here to distinguish between two separate phases of investigation. At the time of the original indictment, the defendant's whereabouts were unknown. And while the government could have continued its investigation at that point, it very well could have reasonably concluded that it would have been a poor use of government resources to have done so. Instead, the government awaited Honda's apprehension, at which point the government has the prerogative to both conduct additional investigation and also, I would add, particularly in the light of the fact that there was a new prosecutor here, to look at the evidence already in its possession and reassess the proper scope of criminal prosecution in light of that. You just heard Mr. Weinberg say that can be taken care of in Barker factors 2 through 4. It shouldn't alter the rule as to when the clock starts ticking. What's your response to that? Well, as to the rule as to when the clock starts ticking, I would point out that any such rule has been defined only by reference to mere assumption up to this point. But that said, I think the limitations of the Barker inquiry insofar as it applies to an instance like the instance we have here where there is a long period of delay between indictment and arrest, those limitations are evident, in my view, in the district court's opinion. By defining the length of delay as unitary for both charges, there is an anchoring effect that causes the district court to then look at the other Barker factors. You said you weren't challenging on appeal the district court findings about the other three factors. You now seem to be backing off of your brief. Not at all, Your Honor. I'm simply responding to the question about why we couldn't just account for this by way of the Barker analysis. Okay. Thank you. Thank you.